UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR THE REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE7, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE7,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO TITLE INSURANCE COMPANY, AS SUCCESSOR-IN-INTEREST TO TICOR TITLE INSURANCE COMPANY; FIDELITY NATIONAL TITLE GROUP, INC; TICOR TITLE INSURANCE COMPANY OF NEVADA,<br><br>Defendants. | Case No. 2:21-cv-01854-CDS-DJA<br><br>Order |

Before the Court is Plaintiff Deutsche Bank National Trust Company's Motion to Remand to State Court (ECF No. 7), Defendants' Motion to Stay the Case (ECF No. 11), Defendant Chicago Title Insurance Company's Motion to Dismiss (ECF No. 34), and Defendant Ticor Title of Nevada, Inc.'s Motion to Dismiss (ECF No. 35).

For the reasons expressed below, Plaintiff's Motion to Remand this action to state court (ECF No. 7) is GRANTED and the Defendants' Motion to Stay and Motions to Dismiss (ECF Nos. 11, 34, 35) are DENIED as moot.

**Relevant Background Information**

Plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") initiated this litigation on October 6, 2021, in the Eighth Judicial District Court in Clark County, Nevada asserting breach of contract, insurance bad faith, and other Nevada state law causes of action. ECF No. 1, Ex. 1. Deutsche Bank sued Chicago Title Insurance Company ("Chicago Title"), Fidelity National Title Group, Inc. ("Fidelity"), and Ticor Title Insurance Company of Nevada ("Ticor").[1] *Id.* Ticor is the only defendant that is a Nevada entity.

The same day that Deutsche Bank filed in state court, Chicago Title removed this action to federal court. ECF No. 1. Given the immediacy of the removal, none of the defendants had been served prior to removal. *Id.* at 2. This tactic of removing a diversity case before the forum defendants have been served is termed "snap removal." *See, e.g., Deutsche Bank Nat'l Trust Co. v. Fidelity Nat'l Title Grp., Inc.*, 2020 WL 7360680, at *1 (D. Nev. Dec. 14, 2020). The goal of snap removal is to circumvent the forum defendant rule, which prohibits removal when any defendant "properly joined and served" is a forum defendant. 28 U.S.C. § 1441(b)(2).

Deutsche Bank now moves to remand to state court, arguing that removal was improper because the presence of Ticor, a forum defendant, is subject to the forum-defendant rule which precludes this Court from exercising subject matter jurisdiction. ECF No. 7 at 5. Chicago Title responds that removal was proper for two reasons. First, they assert that the "properly joined and served" language of § 1441(b)(2) compels this Court to allow snap removals. *See generally* ECF No. 8. Second, they assert that Ticor is fraudulently joined to defeat removal. *Id.* at 16-19.[2]

---

[1] Initially, Deutsche Bank incorrectly named Ticor Title Insurance Company of Nevada instead of using its proper name "Ticor Title of Nevada, Inc." ECF Nos. 1 at 1, fn.1; 7 at 1, fn.1. I note the error and refer to Ticor Title of Nevada, Inc. as "Ticor".

[2] Chicago Title also argues that attorneys' fees are unwarranted and that the Court should "deny Deutsche Bank's request for attorneys' fees." ECF No. 8 at 19-20. Deutsche Bank did not move for attorneys' fees. *See generally* ECF No. 7.

2

Deutsche Bank replied that both grounds for removal have no basis in law and reiterated their request for the matter to be remanded to state court. ECF No. 13 at 3-12.

The Court first addresses Plaintiff's Motion for Remand (ECF No. 7) and thereafter the Defendants' Motion to Stay and Motions to Dismiss (ECF Nos. 11, 34, 35).

### I. Motion for Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *See* U.S. Const. art. III, § 2, cl. 1; *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). When initiating a case, "[a] plaintiff is the master of [their] complaint, and has the choice of pleading claims for relief under state or federal law (or both)." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 368, 389-99 (1987). Generally, plaintiffs are entitled to deference in their choice of forum. *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 949-50 (9th Cir. 2017).

However, Congress has enacted statutes that permit parties to remove cases originally filed in state court to federal court. 28 U.S.C. § 1441. The general removal statute permits "the defendant or the defendants" in a state-court action over which the federal courts would have original jurisdiction to remove that action to federal court. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). "To remove under [§ 1441(a)], a party must meet the requirements for removal detailed in other provisions." *Id.* When federal jurisdiction is based solely on diversity jurisdiction, the case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought," 28 U.S.C. § 1441(b)(2). *Home Depot*, 139 S. Ct. at 1746; *see also Lively v. Wild Oaks Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (describing the "forum defendant rule"). A defendant "always has the burden of establishing that removal is proper" and must overcome a "strong presumption against removal

jurisdiction." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (internal quotation marks and citation omitted). Federal courts construe the removal statute against removal. *Id.; see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

      *i.*      *Discussion regarding "snap removal"*

When a defendant in a non-diverse lawsuit seeks to remove a state-court action to federal court before a forum defendant is served with process, defendants circumvent the forum defendant rule. This procedural loophole is called "snap removal." It encourages defendants to "race to the courthouse" to "make an end run around the forum defendant rule." *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316 (D. Mass. 2013). Courts that have confronted snap removal are split. *Compare Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("a home-state defendant may in limited circumstances remove actions filed in state court on the basis of diversity of citizenship") *and Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018) ("this result…allows [defendant] to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result") *and Texas Brine Co. v. Am. Arbitration Ass'n*, 955 F.3d 482, 487 (5th Cir. 2020) ("[a] non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be properly joined and served is a citizen of the forum state") (internal quotations omitted) *with Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014) (affirming a district court's dismissal without prejudice of a case that had been snap removed to federal court so "that plaintiff could refile the case in state court in such a manner as to irrefutably trigger the forum-defendant rule and…preclude a second removal"). The Ninth Circuit has not specifically addressed snap removal, whereas noted above, other Circuits have endorsed the practice.

At the district court level, snap removals have sometimes been found to be proper under a strict reading of the statute's plain language. *Little v. Wyndham Worldwide Ops., Inc.*, 251 F. Supp. 3d 1215, 1220 (M.D. Tenn. 2017) (collecting and summarizing cases); *see also Terry v. J.D. Streett & Co., Inc.*, 2010 WL 3829201, at *2 (E.D. Mo. Sept. 23, 2010) (approving of snap removal based on statute's plain language). On the other hand, district courts that find snap removals improper tend to analyze the purpose behind the forum defendant rule, the congressional intent behind that rule, and evaluate whether allowing snap removals would produce an absurd result. *Perez v. Forest Labs., Inc.*, 902 F. Supp. 2d 1238, 1246 (E.D. Mo. 2012) (disapproving of snap removal based on legislative intent), *Perfect Output of Kansas City, LLC v. Ricoh Ams. Corp.*, 2012 WL 2921852, at *2 (W.D. Mo. July 17, 2012) (same); *Delaughder v. Colonial Pipeline Co.*, 360 F Supp. 3d 1372, 1379 (N.D. Ga. 2018) ("[T]he majority of courts that remanded snap removals did so on a legislative intent rational, agreeing that the literal application of the statutory language favors snap removals."); *Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021) (finding the plain language of § 1441(b) ambiguous and that permitting snap removal would produce an absurd result).

As evidenced by the collection of cases with differing results, courts "are in disarray on the question" of snap removal. *See Gentile*, 934 F. Supp. 2d at 316 (collecting cases). Many district courts seem to agree that the "properly joined and served" language plainly allows non-forum defendants to remove cases prior to service upon forum defendants. *Id.* at 317. They differ as to whether following that plain meaning is compulsory, or whether the result (of snap removal) is so contrary to congressional purpose or absurd in result that the bar to removal ought to apply. *Id.*

. . .

      *ii.*      *The Parties' Competing Arguments on the Propriety of Snap Removal*

In sum, Deutsche Bank argues that the claims in this case properly reside in state court. Deutsche Bank first argues that snap removal is contrary to precedent and further argues that removal was defective because no defendant was served. ECF No. 7 at 7-8. Deutsche Bank also argues that even if Chicago Title could remove before service, the statute would not allow that to defeat diversity of citizenship between adversarial parties. *Id.* at 9-12.

Chicago Title avers that Deutsche Bank's motion to remand requires this Court to disregard the plain meaning of the statutory text of 28 U.S.C. § 1441(b)(2) precluding removal based on in-state citizenship when the defendant has been properly joined and served. *See* ECF No. 8 at 2. Chicago Title acknowledges that the local agents in this case had not been served at the time of removal but argues that the purpose of the removal statutes is to protect out-of-state defendants, regardless of whether they have been served or not, and therefore removal before a defendant is actually served should be allowed by the Court. *See generally id.* Chicago Title further argues that even if the Court disagrees with them regarding application of the removal statute, the circumstances surrounding Deutsche Bank's joinder of parties, or as argued by Chicago Title "misjoinder," indicate that remand is nonetheless unwarranted because Deustche Bank fraudulently joined Ticor to defeat diversity jurisdiction. *Id.* at 16.

As set forth below, the Court respectfully disagrees with Chicago Title.

      *iii.*      *Snap Removal is Improper*

The Court has spent considerable time weighing the arguments set forth in moving papers. Both parties present solid arguments in support of their positions on whether snap removal is proper. After carefully considering the text and structure of the removal statute as a whole, and strictly construing the removal statute against removal, this Court finds that snap

removal is an improper tactic and therefore Defendants were not permitted to remove the action prior to their receipt of service.

Federal courts strictly construe the removal statute due to concerns regarding federal courts infringing upon state sovereignty. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."). To avoid collision between state courts and federal courts, "it is to be presumed that a cause lies outside" the limited jurisdiction of the federal courts, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017) (internal quotations and citation omitted); *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (defendants seeking to remove an action grounded in state law bear the burden to show that "the complaint…is within the original jurisdiction of the district court"). This burden on a removing defendant is especially heavy because "[t]he removal statute is strictly construed and **any doubt about the right of removal requires resolution in favor of remand**." *Id.* (emphasis added) (citations omitted); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")).

Defendants cannot meet the high burden of jurisdiction because they cannot overcome this Court's doubts about their right of removal. This Court follows others in this District and nationwide which have found the plain meaning of the removal statute is at odds with the purpose of the statute. The language of 28 U.S.C. § 1441(b)(2) contravenes the statute's purpose and creates an absurd result.[3] When the plain meaning of a statute leads to "absurd or futile

---

[3] This Court recognizes that other courts have found the opposite and have determined that § 1441(b)(2) is unambiguous. *See, e.g., U.S. Bank, N.A. v. Fidelity Nat'l Title Grp., Inc.*, 2021 WL 5566538, at *4

results," courts should look beyond the words to the purpose of the act. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940).

The absurd result of snap removal is that the removal statute would be granting jurisdiction over a set of cases that previously had no jurisdictional basis to be heard by federal courts: cases lacking original jurisdiction or diversity jurisdiction between parties (i.e., cases like the one at issue presently, where Plaintiff pleads only state law claims and sues non-diverse Defendants). The difference between the availability of jurisdiction premised on snap removal and the lack of such jurisdiction could come down to slivers of time – hours, minutes, even seconds – between the Plaintiff's filing of the Complaint and Defendant's removal to federal court prior to service. For example, it is an absurdity that this Court should have jurisdiction over a case wherein proper service takes N hours following the filing of the complaint and the Defendant removes to federal court within N - 1 hours, but not have jurisdiction if the Defendant removes to federal court within N + 1 hours.

Even in the alternative, if the result is not thought to be so absurd as to warrant this construction of the statute, snap removal still should not be permitted. "Even when the plain meaning [does] not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,'" courts should follow that purpose, "rather than the literal words." *Id.*

Assuming *arguendo* that the plain language of 28 U.S.C. § 1441(b)(2) permits snap removal in certain cases, the purpose of the forum defendant rule is best fulfilled by rejecting snap removals and remanding such cases back to state court. The purpose of the removal statute has been analyzed at length by other courts facing this same issue. *See, e.g., Gentile*, 934 F. Supp. 2d at 319-21 (describing the "history and purpose of removal" as well as the "properly joined and

---

(D. Nev. Nov. 29, 2021); *Doe v. Daversa Partners*, 2021 WL 736734, at *5 (D.D.C. Feb. 25, 2021) (rejecting Judge Woodlock's reasoning as "strained").

served" language). "The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, [which] was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants." *Id.* at 319. Forum defendants do not need protection from bias of the forum state, so § 1441(b)(2) protects the plaintiff's choice of a state court forum where a forum defendant is a proper party to the case. *Id.* The goal of the "properly joined and served" language was to "thwart gamesmanship by plaintiffs who joined forum defendants with no intent of ever serving them." *Deutsche Bank*, 2020 WL 7360680, at *3.

Instead of thwarting gamesmanship, however, the properly joined and served provision seems to have not only created a loophole, but also encourages exploitation of that loophole. "To adopt a literal interpretation of the joined and served provision would promote gamesmanship by defendants through allowing removal before a plaintiff has a meaningful chance to serve any defendant." *Black v. Monster Beverage Corp.*, 2016 WL 81474, at *3 (C.D. Cal. Jan. 7, 2016) (internal quotation omitted). Viewing the words "joined and served" in light of the statute's goal to permit only out-of-state defendants to litigate in federal courts, a more sensible reading "is to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue in order to prevent removal." *Standing v. Watson Pharm., Inc.*, 2009 WL 842211, at *3 (C.D. Cal. Mar. 26, 2009). But where a forum defendant is not fraudulently joined, following the plain meaning of the statute both undermines the general purpose of the forum defendant rule (i.e., to keep certain cases in state court) and inappropriately prevents plaintiffs from litigating in the forum of their choice. *Id.* at *4; *see also Deutsche Bank*, 2020 WL 7360680, at *2-4 ("The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served.").

Snap removal serves to allow gamesmanship by defendants who "are sophisticated and have sufficient resources (or suspicion of impending litigation) to monitor court filings and immediately remove a case before a forum defendant can be served."[4] *Deutsche Bank*, 2020 WL 7360680, at *4. Ultimately, the purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served. *See, e.g., Carrington Mortgage Servs., LLC v. Ticor Title of Nevada, Inc.*, 2020 WL 3892786, at *2-3 (D. Nev. July 10, 2020) (Mahan, J.) (granting a motion to remand in a snap removal case and adopting the policy argument that Judge Woodlock espoused in *Gentile*). The plaintiff can preserve its ability to remain in state court by serving the forum defendant first and without delay. The non-forum defendant may still argue that the forum defendant is a sham who should be regarded for purposes of removal. *Id.*; *see also Gentile*, 934 F. Supp. 2d at 322-23. And this interpretation accords with the Supreme Court's mandate on strictly construing the removal statute and the jurisdiction of federal courts more generally.

Contrary to the arguments advanced by Chicago Title, and discussed further *supra*, there is no basis for diversity jurisdiction because Ticor was properly joined to this action as a forum defendant. There is no federal question jurisdiction because Deutsche Bank's claims are properly alleged under state law. There is also no basis for removal jurisdiction because allowing "snap removals" would undermine the purpose of the removal statute, leading to absurd and unintended results. Finding no bases for jurisdiction, this Court must grant Plaintiff's motion to remand the matter to state court.

. . .

---

[4] While only 11 years have elapsed since the most recent amendment to 28 U.S.C. § 1441(b)(2), advancements in technology and e-monitoring of case filings have improved significantly and exponentially. Such innovations further contribute to gamesmanship and an ability to thwart the purpose of the removal statute.

       iv.       *Ticor was Properly Joined and is Not a Sham Defendant*

Chicago Title argues that Ticor is "fraudulently" joined because it did not underwrite the policies or handle the title insurance claims. *See* ECF No. 1 at 2-3. I disagree. Ticor, the forum defendant in this litigation, was properly joined by Deutsche Bank because Deutsche Bank's claims against Ticor satisfy both prongs of the rule permitting joinder of parties. Rule 20(a)(2) states "[p]ersons…may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A-B).[5] "Permissive joinder is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548 (9th Cir. 2015) (citing *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Deustche Bank can meet the first prong of the rule, regarding the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). That test "refers to similarity in the factual background of a claim." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Deutsche Bank's claims against Ticor indeed arise out of the same series of transactions or occurrences as its claims against Chicago Title and the other underwriter defendants. *See generally* Complaint, ECF No. 1, Ex. 1. Deutsche Bank alleges that "it entered into a contractual relationship with *both* Ticor Title Nevada and Chicago Title when it procured the

---

[5] As the instant action was initially filed in state court, Deutsche Bank joined the defendants pursuant to Nev. R. Civ. P. 20, Nevada's analogue to Fed. R. Civ. P. 20. The state and federal joinder rules are nearly identical in language and equivalent in substance.

policy." ECF No. 13 at 9. It argues in the alternative that its claims are valid even if Ticor was acting as an agent of Chicago Title under Nevada state law. *Id.* Furthermore, the interrelationship between Chicago Title and Ticor is pled throughout the complaint. *See generally* ECF No. 1, Ex. 1. In total, the evidentiary overlap in the facts giving rise to each of Deutsche Bank's causes of action against Defendants, including both the forum and non-forum defendants, establishes the first prerequisite to permissive joinder.[6]

Deutsche Bank can also meet the second prong of Fed. R. Civ. P. 20, regarding common questions of law or fact. It requires only the existence of "a single question of law or fact" in common to permit joinder. *Schreckengost v. Nevada ex rel. Nevada Dep't of Corrections*, 2020 WL 3050708, at *4 (D. Nev. June 8, 2020). Deustche Bank alleges several common questions of fact pertaining to both Ticor and the non-forum defendants, including, *inter alia*, whether Ticor issued the Title Policy to Deutsche Bank's predecessor-in-interest, whether the policy gave rise to a duty to defend Deutsche Bank in litigation arising from challenges to Deutsche Bank's deed of trust, whether Ticor Title is an alter ego or engaged in a joint venture with Chicago Title, whether Ticor and/or Chicago Title breached their contract with Deutsche Bank's predecessor, whether all defendants knew or had reason to know that Deutsche Bank's predecessor purchased the policy with expectation that coverage would be provided, and whether all defendants implemented practices which summarily call to deny claims stemming from Nevada HOA foreclosure sales regardless of Defendants' actual knowledge as to whether the claims fell under the insurance policies. ECF No. 1, Ex. 1 at 23-26. Furthermore, Deutsche Bank's claims of tortious bad faith and breaches of the covenant of good faith and fair dealing turn on specific

---

[6] Chicago Title also asserts that Deutsche Bank may have filed its claims for deceptive trade practices against Ticor after the statute of limitations had tolled. While this Court lacks the jurisdiction to determine whether a statute of limitations violation has occurred, Deutsche Bank pleads sufficient claims against all the defendants in causes of action one through three of its complaint, such that Ticor is properly joined regardless of the disposition of the deceptive trade practices claims.

factual inquiries that can be resolved efficiently during the same adjudication. The commonality posed by the specific factual and legal inquiries related to Deutsche Bank's causes of action establishes the second prerequisite to permissive joinder.

Because Deutsche Bank can meet both prongs of the permissive joinder test described in Fed. R. Civ. P. 20(a)(2) with respect to Ticor, its causes of action against Ticor were properly joined to its causes of action against the non-forum defendants. The allegations underlying Deutsche Bank's claims against the underwriter defendants and Ticor, the similarity of factual and legal issues that need to be resolved to adjudicate those claims, and the expediency of resolution in one consolidated lawsuit all marshal in favor of permitting Deutsche Bank to join its claims against Ticor with its claims against the other defendants. Accordingly, I find that Ticor was not fraudulently joined.

**Conclusion**

For the reasons above, IT IS ORDERED that Plaintiff's Motion to Remand (ECF No. 7) is GRANTED. This case is to be remanded to the state court from which it was removed for all further proceedings.

IT IS FURTHER ORDERED that Defendants' Motion to Stay the Case (ECF No. 11) is DENIED as moot.

IT IS FURTHER ORDERED that Defendant Chicago Title Insurance Company's Motion to Dismiss (ECF No. 34) is DENIED as moot.

IT IS FURTHER ORDERED that Defendant Ticor Title of Nevada, Inc.'s Motion to Dismiss (ECF No. 35) DENIED as moot.

. . .

. . .

. . .

The Clerk of the Court is instructed to close this case.

IT IS SO ORDERED.

DATED this July 18, 2022.

_____
Cristina D. Silva
United States District Judge